IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THURMAN HOLDER,

        Plaintiff,

v.

CENTRAL OREGON COMMUNITY
COLLEGE, KEVIN KIMBALL, and
VICKERY VILES,

        Defendants.

Case No. 6:14-cv-01704-AA
OPINION AND ORDER

---

Kevin T. Lafky
Tonyia J. Brady
Lafky & Lafky
429 Court Street NE
Salem, Oregon 97301
    Attorneys for plaintiff

Haley Percell
Oregon School Board Association
P.O. Box 1068
Salem, Oregon 97308
    Attorney for defendants.

PAGE 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Thurman Holder filed this action against Defendants Central Oregon Community College ("COCC"), Kevin Kimball ("Kimball"), and Vickery Viles ("Viles"), alleging gender discrimination and retaliation against COCC under the Oregon Fair Employment Practice Act, O.R.S. 659A.030. Plaintiff further alleges Kimball and Viles violated his right to procedural due process under the Fourteenth Amendment of the United States Constitution. Defendants move for summary judgment on all claims and assert a qualified immunity defense.

On April 12, 2016, the Court heard oral argument on defendants' motion. For the reasons set forth below, defendants' motion is granted in part and this action is dismissed and remanded to state court.

## BACKGROUND

In 2009, plaintiff began working as an Academic Advisor at COCC. The Career, Advising, and Personal Counseling ("CAP") Center Director, Viles, supervised the Academic Advisors and through the years she gave plaintiff good performance evaluations.

Three broad categories of events are relevant to plaintiff's eventual termination: (1) interactions with a co-worker, Keri Podell ("Podell"); (2) off-campus advising meetings; and (3) an interaction with a student. I will discuss the events by category, not chronologically.

1.  *Interactions with Co-Worker*

Plaintiff shared an office with Podell. They built a friendship and at times discussed personal matters in the office and over social media. In April 2013, Podell grew uncomfortable with the personal dimensions of the relationship and told plaintiff she wanted to end their friendship. In June 2013, Podell sent Viles an email titled "Official complaint," in which she expressed concerns about

PAGE 2 - OPINION AND ORDER

plaintiff and sought to move offices. That same day, Podell sent Viles a list of specific complaints about plaintiff. Viles met with plaintiff to discuss Podell's complaint. Viles explained that Human Resources ("HR") intended to draft an agreement for Podell and plaintiff to govern their working relationship going forward, and that HR would not conduct a formal investigation unless plaintiff requested one. Plaintiff declined a formal investigation. In July 2013, Podell and plaintiff signed the HR-drafted agreement, limiting their interactions to work-related matters.

In November 2013, plaintiff contacted Podell about participating in a workshop about HR processes that he was creating in his personal time. Podell declined. In December 2013, plaintiff emailed Podell, requesting "to set up a meeting . . . to explain his perception of the year's events." Doc. 16-1 at 9. Podell again declined, and forwarded plaintiff's email to Viles. In January 2014, plaintiff and Viles met to discuss the meeting request plaintiff sent to Podell. Viles explained the request appeared to be an "attempt to discuss personal issues," and reminded plaintiff that "the agreement from July agrees to keep [his and Podell's] work relationship focused on work related matters only." Doc. 15-1 at 10.

2.  *Off-Campus Advising*

In May 2013, Viles noticed an entry on plaintiff's calendar entitled "Coffee House Tours Astro Lounge." Astro Lounge is a restaurant and bar in downtown Bend, Oregon. When Viles asked about the entry, plaintiff explained he often met off-campus with students for advising meetings. He referred to these meetings as "Coffee House Tours." Viles told plaintiff meeting students at a bar was inappropriate and he agreed to not schedule advising meetings at Astro Lounge. In October 2013, plaintiff mentioned in a response to an inquiry about appointment availability that he often met with students for off-campus advising. This email was sent to all of the Academic Advisors. In response

PAGE 3 - OPINION AND ORDER

to the email, two Academic Advisors contacted Viles and expressed concerns about the off-campus meetings.

After meeting with HR to discuss the liability concerns, Viles told plaintiff the CAP Center would no longer accommodate off-campus advising meetings. Other departments at COCC allow professors to meet students for off-campus advising meetings. The professors who are permitted to meet with students off-campus are female. Citing evidence of these meetings, in November 2013, plaintiff's lawyer contacted COCC regarding the Podell complaint process and alleged that plaintiff was being singled out due to his gender regarding off-campus meetings.

3.  *Interactions with Student*

In January 2014, one of plaintiff's co-workers contacted Viles about witnessing an interaction between plaintiff and a student where plaintiff allegedly offered to purchase boots the student was wearing. The co-worker said the interaction made her uncomfortable. Plaintiff says the "offer" was a hypothetical example of how the student could make additional money to pay for school, not a genuine negotiation to buy the boots. On January 14, 2014, Viles met with plaintiff to express concern regarding the interaction between plaintiff and the student.

4.  *Termination Process*

On January 17, 2014, Viles met with plaintiff and informed him she was recommending him for termination, and placed plaintiff on administrative leave. On January 29, 2014, plaintiff was provided with a "Notice of Pre-Dismissal Hearing." The Notice set a dismissal hearing for February 5, 2014, and explained Viles was recommending plaintiff's dismissal because plaintiff "demonstrated a lack of judgment and/or the inability to recognize when [his] decisions were not in line with professional situations." Doc. 16-1 at 11. Viles proposed dismissal because plaintiff (1)

"contact[ed] a co-worker multiple times despite a written and signed agreement" to limit communications "to work-related topics"; (2)"offer[ed] to meet students at a bar, after hours, for academic advising"; (3) "offered [a] student money for her boots"; and (4) primarily responded to questions about meeting at a bar and the incident with the boots by expressing "regret [for] letting other people know about them." Doc. 16-1 at 11. On February 3, 2014, plaintiff's attorney again contacted COCC, alleging that the proposed termination was gender discrimination.

On February 5, 2014, COCC convened a pre-dismissal hearing. Plaintiff asked the hearing officer, Sharla Andresen, to recuse herself because she had previously communicated with plaintiff's attorney. Andresen declined. After plaintiff alleged at the hearing the true bases for his termination were gender discrimination and retaliation, Andresen suspended her decision pending a discrimination investigation. On February 11, 2014, Gordon Price, the Director of Student/Campus Life, completed an informal investigation and found there was no discrimination. Plaintiff requested a formal investigation. On April 3, 2014, Kevin Multop, the Director of Financial Aid, completed a formal investigation, and found there was no discrimination. Four days later, on April 7, 2014, Kimball, the Chief Financial Officer, signed plaintiff's termination letter in the absence of the college President.

On September 11, 2014, plaintiff filed an action in Deschutes County Circuit Court. Defendants then removed the action to this court.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

PAGE 5 - OPINION AND ORDER

477 U.S. 317, 323 (1986). If the moving party fulfills its burden, the burden shifts to the non-moving party who must go beyond the pleadings to identify genuine issues of fact. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

Plaintiff brings a claim under 42 U.S.C. § 1983, asserting Kimball and Viles violated his right to due process under the Fourteenth Amendment of the United States Constitution. To prevail on a procedural due process claim, a plaintiff must demonstrate "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). The parties agree plaintiff had a protected property interest in continued employment with COCC, but they disagree over whether he was provided with adequate procedural protections.

"The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). A public employee with a property interest in continued employment is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* Plaintiff received notice of a pre-dismissal hearing outlining the reasons for his proposed termination. At oral argument, plaintiff challenged the adequacy of this notice, contending that "lack of judgment" and "not in line with professional expectations" are too vague to give constitutionally adequate notice. However, the notice also cited meeting with students at a bar after hours, contacting Podell in violation of an agreement, and offering to purchase a students boots. These specific

examples illustrate why COCC concluded plaintiff lacked professional judgment and are sufficient to satisfy the notice requirement of due process.

Plaintiff alleges the pre-dismissal hearing was not a meaningful opportunity to be heard because the decision-makers involved in the termination process were biased. To make out a claim of unconstitutional bias, a plaintiff must "overcome a presumption of honesty and integrity" on the part of the decision-makers. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). There are two ways a plaintiff may overcome this presumption. First, the proceedings and surrounding circumstances may demonstrate actual bias on the part of the adjudicator. *Taylor v. Hayes*, 418 U.S. 488, 501-04 (1974). Second, the adjudicator's pecuniary or personal interest in the outcome of the proceedings may create an appearance of partiality that violates due process. *Gibson v. Berryhill*, 411 U.S. 564, 578 (1973).

Plaintiff argues the following evidence demonstrates defendants' actual bias: (1) Viles's notes documenting a meeting with plaintiff; (2) plaintiff's gender discrimination complaint; (3) a parody letter Viles wrote; and (4) Andresen's response to plaintiff's attorney's letters before Viles's recommendation for termination. None of plaintiff's proffered evidence is sufficient to overcome the presumption of honesty and integrity on the part of the adjudicator.

The first three pieces of evidence are intended to show Viles was biased. Viles's notes document a meeting with plaintiff in which he said he felt he was being singled out and intended to "push back." Doc. 16-1 at 5. Viles advised him to "carefully consider how he pushes, and if he can't let it go . . . that he consider the spectrum of possibilities available to him in pushing back." Doc. 16-1 at 5. Plaintiff argues these statements were intended to discourage him from filing a discrimination complaint. He further asserts Viles was angry when he filed a complaint anyway; essentially, he

PAGE 7 - OPINION AND ORDER

characterizes Viles's recommendation he be fired as retaliation when he refused to fall in line. In addition, plaintiff points to a parody letter Viles wrote and emailed to a co-worker, mocking plaintiff's counsel. Standing alone, Viles's notes and the discrimination complaint would be insufficient to show bias; the Court interprets Viles's statements to plaintiff about carefully considering his response as an attempt to guide plaintiff's energy in a productive direction. However, when combined with the parody letter, plaintiff arguably has shown Viles was not neutral. Nonetheless, even assuming Viles was biased, plaintiff has not made out a due process violation, because Viles was not the final decision-maker regarding plaintiff's termination. The question is whether Andresen was neutral.

Plaintiff's only challenge to Andresen's neutrality is that she reviewed and responded to a letter from plaintiff's attorney. Andresen and plaintiff's attorney communicated once before the hearing, when Andresen responded in writing to a letter from plaintiff's attorney. The attorney's letter reasserted that plaintiff was being singled out on the basis of gender, raised questions about the propriety of COCC's actions in response to the Podell incident, and requested a copy of plaintiff's personnel file. Andresen's letter in response provided information about how plaintiff could access his personnel file and answered a question about the contents of that file. It did not address the substance of the discrimination allegations or concerns about the Podell incident. This interaction is not evidence Andresen was biased. *See Withrow*, 421 U.S. at 46-52 (holding prior familiarity with the case or a party, or even prior investigatory actions by the tribunal, insufficient to overcome the presumption of honesty and integrity on the part of the decision-makers). Moreover, the record contains affirmative evidence to bolster the presumption of impartiality. When plaintiff complained of discrimination during the termination hearing, Andresen postponed the termination

PAGE 8 - OPINION AND ORDER

determination and ordered a discrimination investigation.

Plaintiff also asserts he did not have a meaningful opportunity to be heard because he was effectively terminated when Viles recommended termination. "Due process of law [is not present] where the [employer] has gone through the mechanics of providing a hearing, but the hearing is totally devoid of a meaningful opportunity to be heard." *Matthews v. Harney County Sch. Dist. No. 4*, 819 F.2d 889, 893-94 (9th Cir.1987); *see, e.g., Ross v. City of Memphis*, 394 F. Supp. 2d 1024, 1038 (W.D. Tenn. 2005) ("A 'sham' proceeding in which the outcome of the hearing is predetermined does not meet the requirements of a pre-termination hearing and does not afford due process."). As evidence the hearing was a sham, plaintiff provides a pre-dismissal email chain between Viles and HR, in which the HR Director states, "[a]t the end of 30-days from serving Pre-Dismissal Notice, his employment will end with a final paycheck to include all accrued vacation time." Doc.22-1 at 2. Plaintiff argues this statement makes it clear that HR already made the decision to terminate him prior to the dismissal hearing. However, this email can only be fairly read as outlining what will occur after the recommendation for termination is made and what steps will occur if there is a determination to terminate. This pre-termination email chain does not demonstrate the pre-dismissal investigations or hearing procedures were a sham.

Plaintiff also asserts Andresen's decision to stay the termination proceedings pending the outcome of the discrimination investigation was itself a sham. In support of this argument, plaintiff asserts COCC made the final termination determination before formal investigation was complete. He alleges the formal investigation involved two stages: findings and a final report. Andresen made her decision, and Kimball sent and signed the formal termination letter, after the first stage was completed but before COCC issued the final report. Even accepting the premise that the investigation

PAGE 9 - OPINION AND ORDER

was not complete until the final report issued, this is not evidence the hearing process was a sham. Andresen made her decision only after reviewing the results of the informal investigation and the findings from the formal investigation. Plaintiff has presented no evidence sufficient to rebut the most reasonable interpretation of that process: that Andresen was actively considering and weighing evidence at the hearing and for weeks afterward.

Plaintiff next provides evidence that in the two years prior to his termination, about six employees were recommended for termination, and all six of these employees were in fact terminated. Standing alone, this small sample over a short period of time would be insufficient for a jury to find plaintiff was effectively terminated in violation of his right to due process. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *see also Robinson v. Central Point School Dist. 6*, 2012 WL 6131521, *5 (D. Or. 2012) (holding that an employee was deprived of her right to due process and the termination hearing was a sham when her employer took steps to replace her prior to the hearing).

Finally, plaintiff argues that he was deprived of a meaningful opportunity to be heard because his termination was based on false progressive discipline. While false progressive discipline may be probative of pretext in plaintiff's state law claims, this is not a due process violation because plaintiff has not alleged he was entitled to progressive discipline.

Plaintiff failed to demonstrate a genuine issue of material fact as to whether he was given notice and a meaningful opportunity to be heard before COCC terminated his employment.

Therefore, defendants are entitled to summary judgment on plaintiff's due process claim.[1]

## SUPPLEMENTAL JURISDICTION OVER PENDENT STATE LAW CLAIMS

I need not consider plaintiff's remaining state law claims against defendants as I decline to exercise supplemental jurisdiction over those claims. Title 28 U.S.C. § 1367 provides the basis for supplemental jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts shall have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The court has discretion to "decline to exercise" supplemental jurisdiction in various circumstances including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

That is exactly the situation at bar. Here, supplemental jurisdiction over the state law claim was based on federal question jurisdiction over the federal claim, for violation of procedural due process. The court grants summary judgment on the federal claim, and declines to exercise jurisdiction over the remaining state law claims. Therefore, this complaint is dismissed in its entirety.

## CONCLUSION

Defendants' motion for summary judgment (doc. 14) is GRANTED in part (as to claims 3 and 4). This action is DISMISSED and REMANDED to state court for further action.

---

[1] Because there was no constitutional violation, it is unnecessary to discuss qualified immunity.

PAGE 11 - OPINION AND ORDER

IT IS SO ORDERED.

Dated this 29 day of April 2016.

_____

Ann Aiken
United States District Judge